THE STATE OF FLORIDA *ex rel.* RIVERS BUFORD, ATTORNEY GENERAL, *Plaintiff in Error,* v. F. J. FEARNSIDE, H. A. JOHNSON, AND S. S. BROWNING, *Defendants in Error.*

Opinion Filed April 5, 1924.

1. The courts have no power to inquire whether the notice of application to the Legislature for local or special legislation, required by Section 21 of Article III of the Constitution and by the legislation thereunder defining the method of publishing and proving the publication of such notice (Act of May 31, 1887, Chapter 3707 of the Statutes and Secs. 78, 79, Revised General Statutes of 1920) has been given. To ascertain and decide whether the required notice has been given

is exclusively a legislative function and duty,.and the passage of a special or local act is a legislative judgment that proper notice has been duly published and that the legal evidence thereof was "established in the Legislature" before the bill was passed, and the courts are concluded by such judgment.

2. There is nothing in our Constitution that prohibits the Legislature from enacting a statute taking away from the boards of County Commissioners, not only a part, but the whole, of their powers of supervision and control of public roads and bridges, and lodging such powers elsewhere, since the control of all general public highways is vested in the State absolutely without any constitutional limitations or restrictions.

3. Chapter 9582, Special Acts of 1923, relating to a special road and bridge district. in Putnam County does not violate Section 16, or Sections 20 and 21, Article III of the Constitution.

A Writ of Error to the Circuit Court for Putnam County; A. V. Long, Judge.

Affirmed.

*Rivers Buford,* Attorney General, *Hilburn* and *Merryday,* and *A. H. Odom,* for Plaintiff in Error;

*J. V. Walton* and *W. P. Dineen,* for Defendants in Error.

WHITFIELD, J.—The Attorney General filed in the Circuit Court an Information in the nature of *Quo Warranto* in which it is alleged "that Special Road and Bridge District No. 6 of Putnam County, Florida, was duly created and constituted under the provisions of Chapter 13, Title 9 of Division 1 of the Revised General Statutes of Florida, by order of the Board of County Commissioners of Putnam County, Florida, duly passed at a regular meeting of said

Board on May 7, 1923, and said district is still in effect · and has never been abolished; that a special election duly held in the territory embraced in said district, on May 1, 1923, was carried in favor of creating said district and a bond issue of $700,000.00 was voted at said special election against said district, to be issued and sold to pay for the construction of the roads and bridges set out in the petition for, and notice of, said special election; that after said district was created and constituted, it became, was and still is, the duty of the Board of County Commissioners of Putnam County, Florida, as provided by law, to provide by resolution of said board for a sinking fund for the payment of the principal of said bonds at the maturity of same and proceed to issue and sell special road and bridge bonds of said district for the amount provided for by said special election, to have proper plans and specifications prepared for the roads and bridges voted in said special election, to award contracts for the construction of such roads and bridges as provided by law, and to do all things provided by law in carrying out the construction work as voted in said special election, but said Board of County Commissioners have not taken any further steps in said matters after creating and constituting said special road and bridge district, designating the name and number thereof and declaring and publishing the boundaries thereof, because the powers of said Board over same have been usurped by respondents in this, that a bill was introduced and passed in the Florida Legislature on May 15, at the 1923 Session of the Florida Legislature entitled, 'AN ACT to create Certain Territory in Putnam County, Florida, into a Special Road and Bridge District; to legalize and validate an Election and the result as shown by the Canvass of the Returns Thereof; Held in said Territory, constituting the Said Territory into a

Special Road and Bridge District; and to Authorize, Legalize and validate the Building and Construction of Certain Roads and Bridges Named Therein, and for the Issuance of Bonds to Pay Therefor, and the Appointment of a Board of Bond Trustees, and to Invest Said Trustees with Certain Powers and Duties, and to Carry into Effect the object and Purposes of said Election; and to Provide for the Collection, Use and Control of Funds Within said Territory for Interest and Sinking Fund for said Bonds;' that said bill, if same is constitutional, became a law without the approval of the Governor; that said bill created a Board of Bond Trustees to be composed of Three (3) members for the said Special Road and Bridge District No. 6 of Putnam County, Florida, to be appointed by the Governor of the State of Florida to hold office until the first Tuesday in July, 1926, and until their successors are elected, as provided by said bill; that upon the appointment and qualifiction of said Board of Bond Trustees in accordance with the provisions of said Act, said Board of Bond Trustees were by said Act authorized and empowered to issue and sell the bonds voted against said District in the sum of Seven Hundred Thousand ($700,-000.00) Dollars; that said Act provided for said bonds to be signed by the Chairman of said Board of Bond Trustees and to bear the imprint of the corporate seal of said Board of Bond Trustees and attested by the Clerk of the Circuit Court of Putnam County, Florida; said Act further provides that said Board of Bond Trustees should have the entire control, supervision, care, construction and maintenance of the roads and bridges to be constructed in said District out of the funds derived from the sale of said bonds; said Board of Bond Trustees are by said Act further authorized and empowered to advertise for bids for the construction of said roads and bridges and to let

contracts therefor to the lowest responsible bidder, or to construct said roads and bridges and in the construction thereof, said Board of Bond Trustees are empowered by said Act to purchase and provide for all necessary equipments for such work; that said Board of Bond Trustees are further authorized to employ road engineers, attorneys, and legal counsel, in exercising their powers and authority under said Act; that, pursuant to the Act aforesaid, the Governor of the State of Florida on the 6th day of June, A. D. 1923, named, nominated and appointed F. J. Fearnside, H. A. Johnson and S. S. Browning, all of Putnam County, Florida, respondents herein, to be the Board of Bond Trustees of said Special Road and Bridge District No. 6, of Putnam County, Florida; that thereafter and prior to the filing of this information, said F. J. Fearnside, H. A. Johnson, and S. S. Browning filed their bonds and otherwise qualified as such Trustees in accordance with the provisions of said Act, and are now acting in said capacity and are exercising, enjoying, using and performing the powers, franchises, prerogatives, functions and jurisdiction, attempted to be conferred upon them by virtue of the provisions of said Act; that said respondents are using, enjoying, exercising and performing, all without warrant or authority of law, and in violation of the Constitution of the State of Florida, the franchises, functions, powers and jurisdiction of the Board of County Commissioners of Putnam County Florida, in and over said Special Road and Bridge District No. 6 of Putnam County, Florida, and that the said respondents and each and every of them since their said appointment and qualification have usurped and still do usurp within the State of Florida, and within the jurisdiction of this Court, upon the State aforesaid and the people of the State aforesaid, to their great damage and prejudice, the franchises, func-

tions, jurisdictions and powers aforesaid, without authority of law and in violation of the Constitution of the State of Florida, in that said Act is unconstitutional and void for the following reasons:

"1. Said alleged Act violates the provisions of Section 21, of Article 3, of the Constitution of the State of Florida, in that it is a special or local law and it affirmatively appears from the Act itself that the required Sixty days' notice of its introduction in the legislature was not and could not have been given prior to its introduction in the legislature.

"2. Said Act violates Section 20, of Article 3, of the Constitution of the State of Florida, in that said alleged Act is a special or local law, and is by its expressed provisions designed and limited to operate and be of force only in a portion of Putnam County, Florida, and (a) regulates the jurisdiction and duties of the Board of County Commissioner of Putnam County, Florida; and (b) regulates the jurisdiction and duties of the respondents as Board of Bond Trustees for Special Road and Bridge District Number 6 of Putnam County, Florida; and (c) regulates the assessment and collection of taxes for State and County purposes; and (d) provides for opening and conducting elections for County officers; and (e) regulates the fees of Board of Bond Trustees of Special Road and Bridge District Number 6 of Putnam County, Florida.

"3. Said Act violates Section 16 of Article 3 of the Constitution of the State of Florida in that said alleged Act embraces more than one subject and matter properly connected therewith, to-wit: (a) the validation of the special election held May 1, 1923, and proceedings taken in connection therewith by the Board of County Commissioners of Putnam County, Florida, in creating said Spec-

ial Road and Bridge District Number 6 of Putnam County, Florida; (b) creating administration officers in Putnam County, Florida, theretofore unknown to the law and prescribing their jurisdiction, functions and powers; (c) creating said Special Road and Bridge District Number 6 of Putnam County, Florida; (d) assessment and collection of taxes; (e) payment and discharge of bonded indebtedness; (f) regulating the jurisdiction and duties of the Board of County Commissioners of Putnam County, Florida.

"4. Said Act violates Section 16 of Article 3 of the Constitution of the State of Florida in that the following subjects of said Act are not expressed in the title, viz: (a) asessment and collection of taxes, and (b) payment and discharge of bonded indebtedness.

"5. Because it attempts to create officers not authorized by or contemplated by the Constitution of the State of Florida.

"6. Because it seeks to deprive the County Commissioners of Putnam County, Florida, of power, functions, and jurisdictions vested in it by necessary implication arising from the provisions of the Constitution of the State of Florida.

"7. Said alleged Act attempts to vest in other officers powers, duties, functions and jurisdiction plainly intended by the Constitution of the State of Florida to be exercised only by a Board of County Commissioners."

The prayer is that "the said F. J. Fearnside, H. A. Johnson and S. S. Browning in this behalf to answer to the State of Florida by what warrant of authority they, and each of them, claim to use, exercise, enjoy and perform the franchises, functions, jurisdiction, powers of the Board of County Commissioners of Putnam County, Florida, aforesaid."

Process was served and respondents demurred. Writ of error was taken to a final judgment for the respondents on the demurrer to the information, the relator declining to amend.

The Act whose constitutional validity is here challenged is Chapter 9582, Special Laws of 1923, which the information alleges was introduced and passed May 15, 1923. The title and also portions of the Act are stated in the information set out above.

The Constitution provides, Section 20, Article III, that "The legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers, * for assessment and collection of taxes for State and county purposes; for opening and conducting elections for State and county officers" and Section 21, Article III, "In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section, the legislature may pass special or local laws; Provided, That no local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least sixty days prior to the introduction into the legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the legislature before such bill shall be passed."

The courts have no power to inquire whether the notice of application to the legislature for local or special legislation, required by section 21 of Article III of the Constitution and by the legislation thereunder defining the

method of publishing and proving the publication of such notice (Act of May 31, 1887, Chapter 3707 of the statutes and Secs. 78, 79, Revised General Statutes of 1920) has been given. To ascertain and decide whether the required notice has been given is exclusively a legislative function and duty, and the passage of a special or local act is a legislative judgment that proper notice has been duly published and that the legal evidence thereof was "established in the Legislature" before the bill was passed, and the Court are concluded by such judgment. Stockton v. Powell, 29 Fla. 1, text 3, 10 South. Rep. 688; Rushton v. State, 58 Fla. 94, 50 South. Rep. 486; Vann v. State, 65 Fla. 160, 61 South. Rep. 323.

In Horton v. Kyle, 81 Fla. 274, 88 South. Rep. 757, the act was passed at a special session of the legislature, the calling of which by the Governor was not known in time to make the required publication of the notice with reference to special or local laws before the special session adjourned. Here the act was passed at a regular session the time for which is fixed by the constitution and the preamble of the act shows the matter covered by the act was being officially considered on February 5, 1923, and March 7, 1923, in the county where the district is located, both of which dates were more than "sixty days prior to the introduction into the legislature of such bill," which gave ample time for sixty days publication of a notice containing "the substance of the contemplated law," and that the due publication of such notice was made and that such publication of notice was "established in the legislature before such bill" was passed, is conclusively presumed by the courts in the absence of a showing that may in law overcome the presumption. Therefore the act is not shown to have been enacted in violation of Section 21, Article III of the Constitution. Stockton v.

Powell, 29 Fla. 1, 10 South. Rep. 688. The notice of application for special or local legislation reasonably could have included notice of a purpose to seek a legislative validation of the election called March 7 , 1923, to be held May 1, 1923, as well as all proceedings had in connection with such election.

As the act is not one "regulating the jurisdiction and duties of any class of officers," or "for assessment and collection of taxes for State and County purposes," or "for opening and conducting elections for State or County officers," but is an Act to create a Special Road and Bridge District in Putnam County, Florida, for the construction of roads and bridges in such district, the provisions of the act as to the jurisdiction and duties of *district* officers, and as to the assessment and collection of taxes for such *district* purposes and as to the election of district officers do not violate Section 20, Article III of the Constitution. And the provisions as to the duties of the county commissioners of the county, as well as to the other matters last above referred to, are merely incidental to the main purpose of the act and do not violate Section 20, Article III of the Constitution. See State *ex rel.* Attorney General v. Daniel, filed March 19, 1924, also Kroegel v. Whyte, 62 Fla. 527, 56 South. Rep. 498; Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47; Bannerman v. Catts, 80 Fla. 170, 85 South. Rep. 336.

There is nothing in our Constitution that prohibits the legislature from enacting a statute taking away from the boards of county commissioners, not only a part, but the whole, of their powers of supervision and control of public roads and bridges, and lodging such powers elsewhere, since the control of all general public highways is vested in the State absolutely without any constitutional lim-

itation or restrictions.    State *ex rel.* Luning v. Johnson, 71 Fla. 363, 72 South. Rep. 477.

Neither the Act nor its title embrace more than one subject and matter preperly connected therewith, so Section 16, Article III is not violated.    The title sufficiently expresses the subject of the Act and is not misleading or double.    See Butler v. Perry, 67 Fla. 405, 66 South. Rep. 150.    The matter expressed in the title as to the validation of an election held with reference to establishing the district and other proceedings incident thereto are matters properly connected with the subject of the Act, as are the provisions of Section 1 of the Act.

The title not being insufficient or misleading or double, even if the provisions of Section 1 of the Act by which the election held May 1, 1923, less than sixty days before the passage of the Act, is validated, be regarded as eliminated, the remainder of the Act is adequate to accomplish the legislative purpose in enacting the law.

Section 17 of the Act is as follows: "Should any Section, or part thereof, of this Act he held void in judicial proceedings, then only such Section, or part thereof, shall be held to be void and the same shall in no way affect the remaining Sections and parts of this Act, but all other parts of this Act shall be held to be valid and legal."

Affirmed.

TAYLOR, C. J., AND WEST AND TERRELL, J. J., concur.

ELLIS AND BROWNE, J. J., dissent.

BROWNE, J., dissenting.

On May 1, 1923, an election was held in Putnam County to determine whether there should be created in that

county a special road and bridge district. On the 4th of May the election returns were canvassed, and showed that the election resulted in favor of creating the special road and bridge district.

On the 15th of May, 1923, a bill was introduced in the Legislature to validate the election held on May 1, 1923.

It is apparent to me, from this, that sixty days notice as required by Section 21, Article III of the Constitution of Florida was not given.

The *possibility*, that sixty days' notice may have been given of the intention to introduce a bill to vadidate an election that had not been held, may be within the realm of a vivid imagination, but is hardly within the realm of reason.

In the light of legislative action on special and local acts, the decision in Stockton v. Powell, 29 Fla. 1, 10 South. Rep 688, has had the effect of giving judicial sanction and encouragement to the legislature to tear Section 21 of Article III to shreds and scatter it to the four winds of Heaven.

No member of the legislative, executive or judicial departments of the government believes that the constitutional notice of intention to enact local or special laws is given in a vast majority of instances. In fact every well informed member of these departments knows that it is a rare exception when it is done.

For the courts to adopt a presumption, which they know to be false, undermines justice which should be founded on truth.

Excessive credulity led to the decision in Stockton v. Powell, *supra*, but it is carrying credulity to the point where it ceases to be the result of mental processes, to base a solemn judicial decision upon the supposition in this case, that perhaps some one gave notice of his intention

to apply to the Legislature to ratify an election that had not been held—the result of which was not known and could not have been known—and where if the election had gone against bonds, there would have been nothing to ratify.

In the case of Horton v. Kyle, 81 Fla. 274, 88 South. Rep. 757, we said that the presumption upon which the decision in Stockton v. Powell was based, "leads to a conclusion which we know is not so, and we are unwilling to extend it further by adopting another violent presumption,—that notice was given of intention to do something at an extra session of the Legislature before it was known that there would be an extra session."

In that case, no one knew there would be an extra session of the Legislature in time to have given sixty days' notice required by the constitution before the enactment of the law.

In the instant case no one knew how the bond election would result, in time to have given the sixty days notice required by the constitution, before the passage of the validating act.

The principle upon which the case of Horton v. Kyle was decided, I think controls in the instant case.

The doctrine that prevents the judiciary from determining whether Section 21 of Article III of the Constitution has been violated, is based upon the presumption that the Legislature obeyed that constitutional mandate. The same presumption, if applied to all legislative acts, would deprive the courts of power to declare any law unconstitutional when passed in defiance of the mandates of the constitution; a power so essential to the preservation of constitutional government.

The constitutional oath of a member of this court, is not

merely to *obey* the constitution, but "to support, protect and *defend*" it.

To "defend" means "to shield from attack," and neither the decision in Stockton v. Powell, nor decisions in other jurisdictions, can relieve us of our obligation to defend the constitution from attack, from whatever source it may come.

I think, therefore, that so much of Chapter 9582 of the Special Acts of the Legislature of 1923, as purports to validate a road and bridge election held only fourteen days before the introduction of the bill, is null and of no effect, it having been passed in violation of Section 21 of Article III of the Constitution.

ELLIS, J., concurs in this dissent.